UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Josefina Coronel, *et al.*,

                Petitioners-Plaintiffs,

–v–

Thomas Decker, *et al.*,

                Respondents-Defendants.

20-cv-2472 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, Circuit Judge, sitting by designation:

    Petitioner Jose Otero brought this writ of habeas corpus and complaint raising substantive and procedural due process challenges to his custody by Immigration and Customs Enforcement ("ICE"). Otero was released by ICE in 2020 pursuant to preliminary relief ordered by the Court. Arguing that Otero's claims are now moot, Respondents move to dismiss for lack of subject matter jurisdiction. For the reasons that follow, the Court concludes that the claims are moot and therefore GRANTS Respondents' motion.

## BACKGROUND

    Otero, a native and citizen of El Salvador, was arrested by ICE in November 2019 for the purposes of placing him in removal proceedings pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) on the ground that he was a foreign national present in the United States without being admitted or paroled. Otero was detained at the Essex County Jail in Essex, New Jersey. *See* Dkt. No. 1 ("Pet."), ¶ 66; Dkt. No. 45 ¶ 3(b).

    Otero, along with several other Petitioners, filed a "petition for writ of habeas corpus and complaint for injunctive relief" on March 20, 2020, pursuant to 28 U.S.C. § 2241, Pet., followed

1

by a request for emergency relief five days later, Dkt. No. 20.[1] Otero alleged that he faced uniquely serious medical risks from COVID-19 due to his underlying health conditions, and he argued that the Government had violated both his substantive due process rights through deliberate indifference to his medical needs and his procedural due process rights by failing to provide him with an adequate bond hearing.

The Court conducted oral argument on March 26, 2020, and the next day issued an opinion and order granting Otero's request for a temporary restraining order ("TRO") directing his immediate release from immigration detention on reasonable conditions. *See Coronel v. Decker*, 449 F. Supp. 3d 274 (S.D.N.Y. 2020) (Dkt. No. 26). Among other things, the Court found that "Otero was the victim of a violent assault that forced him to have a nephrectomy (removal of left kidney), partial liver resection, and left lung resection. As a result of having major organs of his body partially removed, his immune system is significantly compromised," in turn "rendering him especially vulnerable to the respiratory illness and distress caused by COVID-19." *Id.* at 279, 283 (cleaned up). The Court also found that the Government was "aware of [Otero's] medical conditions and the serious harm that COVID-19 posed to" him. *Id.* at 284. The Court concluded that Otero had demonstrated irreparable harm absent injunctive relief, *id.* at 281–82; a likelihood of success on both the substantive, *id.* at 282–86, and procedural due process claims, *id.* at 286–87; and that the balance of equities and public interest weighed in Otero's favor, *id.* at 287–88. Accordingly, the Court held that a TRO directing Otero's immediate release was warranted. *Id.* at 288–90. Otero was released from detention later that same day. Dkt. No. 28.

---

[1] Otero's petition was joined by Juan Morocho Sumba, Josefina Coronel, Ramon Garcia Ponce, Florencio Moristica, Jose Madrid, and Miguel Miranda as well. But each of those petitioners has since voluntarily dismissed their claims following their release from detention. *See* Dkt. Nos. 73, 80.

Pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure, the parties agreed to extend the TRO through the resolution of Petitioners' request for an injunction. Dkt. No. 43. In the meantime, the immigration court administratively closed Otero's removal proceedings on April 5, 2022. *See* Dkt. 88-1 ¶ 17. Otero was, at that time, in New York state custody on state criminal charges. *See* Dkt. No. 87-1 at 5. The parties report that Otero's state criminal proceedings remain ongoing, *See* Dkt. No. 87 ("Gov't Mem."), at 3; Dkt. No. 88 ("Otero Opp'n"), at 3–4, and that the Government has placed an immigration detainer on Otero. Dkt. No. 88-2 ¶ 5.[2]

On March 11, 2022, the Court directed the parties to confer and file a joint letter "indicating whether any additional relief is being sought in this matter." Dkt. No. 60. After several extensions, Dkt. Nos. 63, 65, 67, 71, 74, all of the Petitioners except for Otero voluntarily dismissed their claims, Dkt. Nos. 73, 80. As for Otero, Respondents explained that their position is that Otero's habeas claims were "moot in light of the fact that Mr. Otero has not been in ICE custody (or Orange County Jail) for more than two years"; Otero disagreed. Dkt. No. 84. Accordingly, the court set a briefing schedule for Respondents to move to dismiss Otero's claims for lack of jurisdiction as moot. *Id.* The motion became fully briefed on December 23, 2022, when Respondents filed their reply. Dkt. No. 89 ("Gov't Reply").

---

[2] "An immigration detainer is the instrument by which federal authorities formally advise another law enforcement agency that they seek custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. . . . [T]he detainer generally requests the agency then having custody of the alien to provide federal authorities with advance notice of the alien's intended release date or to detain the alien for a brief time to allow federal authorities to assume custody." *New York v. U.S. Dep't of Just.*, 951 F.3d 84, 97 n.10 (2d Cir. 2020) (cleaned up).

## DISCUSSION

### I. Legal Standards

A motion brought under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction to hear the case. Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court determines that it lacks the constitutional or statutory power to adjudicate the case. *See* Fed. R. Civ. P. 12(b)(1). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court "may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). "In order to satisfy the case-or-controversy requirement [of Article III], a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Williams*, 475 F.3d 468, 478–79 (2d Cir. 2007) (quoting *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999)). "A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up).

### II. Otero's Petition Is Moot

Respondents contend that the Court lacks jurisdiction over Otero's claims because they are now moot. The Court agrees.

Here, "[t]he petition for habeas corpus requests that Respondents release Petitioner or provide him with a bond hearing. Since the filing of the petition, Petitioner has been released.

4

Following his release from custody, Petitioner 'is no longer suffering an "actual injury."'" *Chocho v. Shanahan*, 308 F. Supp. 3d 772, 774 (S.D.N.Y. 2018) (citation omitted) (quoting *Leybinsky v. U.S. Immigr. & Customs Enf't*, 553 F. App'x 108, 109 (2d Cir. 2014) (summary order)).  And because "[t]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed," given that Otero "has received the relief that was sought in h[is] habeas proceeding, . . . the action is now moot."  *Pierre-Paul v. Sessions*, 293 F. Supp. 3d 489, 492 (S.D.N.Y. 2018) (quoting *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)); *see also Abzerazzak v. Feeley*, No. 21-CV-6443 (FPG), 2022 WL 170404, at *1 (W.D.N.Y. Jan. 18, 2022) ("As a general matter, 'district courts in this Circuit to have considered the issue have found that where an alien challenging his detention under 28 U.S.C. § 2241 is released during the pendency of his Petition under an order of supervision, the Petition is rendered moot.'" (quoting *Jangmo v. Barr*, No. 20-CV-256 (JLS), 2020 WL 1891762, at *2 (W.D.N.Y. Apr. 16, 2020)); *Berrezueta v. Decker*, No. 20-CV-10688 (MKV), 2021 WL 601649, at *1 (S.D.N.Y. Jan. 11, 2021) ("Release from custody generally renders a habeas petition moot . . . ."); *Sokolov v. Holder*, No. 13-CV-947 (PAE), 2013 WL 12377011, at *2 (S.D.N.Y. Aug. 13, 2013) ("Courts in this Circuit have held that a petitioner's release from custody generally moots a habeas petition challenging that custody." (collecting cases)).

Otero distinguishes these and similar authorities because here the Government was directed to release Otero pursuant to preliminary relief ordered by the Court in this proceeding, rather than voluntarily released.  But that fact alone does not preclude a determination that a live case or controversy no longer exists.  *See, e.g.*, *Juan E. M. v. Decker*, No. 20-CV-4594 (KM), 2022 WL 17340669, at *1, 3–5 (D.N.J. Nov. 30, 2022); *De Melo v. Decker*, No. 20-CV-2643 (ALC), 2021 WL 4460970, at *4 (S.D.N.Y. Sept. 28, 2021).  It is true that the release of an

immigration detainee pursuant to a preliminary order does not automatically render the case nonjusticiable. *See, e.g.*, *Xiu Qing You v. Nielsen*, No. 18-CV-5392 (GBD) (SN), 2020 WL 2837022, at *5 (S.D.N.Y. June 1, 2020); *Basank v. Decker*, — F. Supp. 3d —, No. 20-CV-2518 (AT), 2020 WL 1953847, at *4 (S.D.N.Y. Apr. 23, 2020). But on this record, the Court concludes that a live controversy no longer exists, substantially for the reasons stated by the Government. *See* Got't Mem. 8–14; Gov't Reply 2–10.

Otero's petition was predicated on allegations about the conditions at Essex County Jail in early 2020, at the onset of the COVID-19 pandemic. But Otero is no longer in custody in Essex County Jail—nor in the custody of federal immigration authorities at all—having been released nearly three years ago. The risks posed by COVID-19 today, both at Essex County Jail and more generally, are no longer the same. *See Paul v. Decker*, No. 20-CV-2425 (KPF), 2021 WL 1947776, at *6 (S.D.N.Y. May 14, 2021) ("[C]onditions in immigration detention have changed since the pandemic's outbreak in early 2020, leading a number of courts in this District to reject claims regarding the conditions of confinement at these facilities based on the practices and precautions now taken by ICE, as well as the now-tangible prospect of widespread vaccination rollouts." (collecting cases)). While Otero is currently in custody, he is being held by New York state authorities on state charges wholly unrelated to the detention that was the basis for his claims in this litigation.

Otero argues that "Respondents are overwhelmingly likely to redetain" him, pointing to the immigration detainer placed by the Government, the absence of a representation by the Government that they will not re-detain him, and the Government's opposition to administrative closure of his immigration proceedings. Otero Opp'n 8–9. Accordingly, he argues, "the highly predictable nature of Mr. Otero's redetention, his merely paused and unfinished removal

6

proceedings, and his extreme mental and physical health conditions . . . mean that there is both an 'actual injury' and 'collateral consequences' worthy of this Court's review." *Id.* at 11.

But the Government notes that "[a]t this point, if and when Mr. Otero may ever be re-detained by ICE depend on the outcome of his ongoing criminal proceedings," both the timing and resolution of which remain unknown. Gov't Reply 1. In the event Otero is found guilty on the state criminal charges pending against him, and the Government were to reopen removal proceedings and again seek immigration detention, the applicable detention authority may be 8 U.S.C. § 1226(c)—an entirely different provision than the one, § 1226(a), that Otero was previously held under and that is the subject of his petition. And the Government represents that "Essex County Jail no longer accepts immigration detainees—rendering it implausible that Mr. Otero will again face the circumstances that led to his habeas petition." Gov't Reply 6. In this regard, the Court finds Judge McNulty's analysis in *Juan E. M.* instructive. There, an immigration detainee had alleged unconstitutional conditions of confinement and inadequate medical care arising from Essex County Correctional Facility's response to the COVID-19 pandemic, and had been released pursuant to a preliminary injunction entered by the court. 2022 WL 17340669, at *1. Over two years later, the court dismissed the petition as moot.

> [E]ven assuming petitioner were reasonably likely to be re-detained, the petition focuses on the conditions at ECCF. But (1) ECCF no longer accepts immigration detainees; thus, petitioner would not be subjected to *any* conditions there, let alone the conditions he describes in his petition; and (2) not only do the claims arise out of petitioner's detention at ECCF, they arise out of the conditions at ECCF in April 2020. It is now 2.5 years later and conditions have changed since the initial weeks of the pandemic; to state only the most obvious, vaccines have been developed and rates of death or hospitalization have declined. In short, petitioner, if he were to be re-detained, could not reasonably expect that he would return to the conditions described in his petition and the violations alleged in the petition would recur.

*Id.* at *4. For the same reasons here, Otero's petition is now moot. *See, e.g.*, *De Melo*, 2021 WL 4460970, at *4 ("[E]ven if ICE re-arrested [the petitioner], it is unknown where he would be

detained and whether the conditions at that facility would be the same specific conditions challenged in the Petition."); *Paul*, 2021 WL 1947776, at *5 ("[T]he state of the COVID-19 pandemic has changed substantially. . . . [T]he Court cannot find a reasonable expectation that Petitioner will be subject to the same conditions again, even if re-detained in the near future.").

### III. The Capable of Repetition, Yet Evading Review Exception Does Not Apply

Otero invokes the "capable of repetition, yet evading review" exception to mootness. *See* Otero Opp'n 12–13.[3] This exception applies "only in exceptional situations" where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (cleaned up). Otero bears the burden of demonstrating that this exception applies. *See Video Tutorial Servs., Inc. v. MCI Telecomms. Corp.*, 79 F.3d 3, 6 (2d Cir. 1996).

Otero does not meet that burden here. He argues that "[r]edetention is not just a theoretical possibility for Mr. Otero but overwhelmingly likely in light of the immigration detainer." Otero Opp'n 12. But this argument falls short for the reasons already discussed. "[T]he circumstances are now substantially changed" from those underlying Otero's petition. *Pierre-Paul*, 293 F. Supp. 3d at 492. Even accepting Otero's contention that the Government is likely to seek immigration detention following the resolution of his state criminal proceedings, "the Court's conclusion that the conditions of confinement are reasonably likely to be substantively different were Petitioner ever to be re-detained[] ensur[es] that Petitioner cannot satisfy the second element of the capable-of-repetition test." *Paul*, 2021 WL 1947776, at *6–7

---

[3] Although the Government addresses the voluntary cessation exception to mootness, Otero does not press it, correctly observing that Respondents "were compelled to release Mr. Otero by order of this Court" rather than through voluntary action. Otero Opp'n 14.

(rejecting capable-of-repetition exception "given the changes in conditions of confinement with respect to the COVID-19 pandemic" because asking "the court to evaluate COVID-19 conditions of detention at an indeterminate time in the future, in an unspecified facility, [i]s an impermissible speculative inquiry about the hypothetical conditions of some hypothetical future detention" (cleaned up)); *see Ojo v. Wolf*, No. 20-CV-6296 (EAW), 2021 WL 795320, at *2 (W.D.N.Y. Mar. 2, 2021) ("[T]he existence of a chance of re-detention does not satisfy this exception . . . ."). "Moreover, if []he were re-detained, [Otero] may again file a petition for habeas in the appropriate federal court." *Pierre-Paul*, 293 F. Supp. 3d at 493.[4]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Respondents' motion to dismiss Otero's claims as moot.[5] This dismissal is without prejudice to Otero's ability to seek any available habeas relief from the appropriate court should he be re-detained by federal immigration authorities.

The Clerk of Court is respectfully directed to terminate Dkt. No. 86 and to close this case.

SO ORDERED.

Dated: January 17, 2023
New York, New York

ALISON J. NATHAN
United States Circuit Judge,
sitting by designation

---

[4] In light of this conclusion, the Court need not reach Respondents' alternative argument that Otero's claims are not ripe. *See* Gov't Mem. 14–19.

[5] Accordingly, the Court need not, and does not, reach Respondents' argument that Otero's due process claims under the Fourteenth Amendment are meritless because that amendment's Due Process Clause does not apply to the federal government. Gov't Mem. 4 n.2.